IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF DELAWARE

| | |
|---|---|
| OHIO SECURITY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>KEITH PRYER, KEITH PRYER, LLC<br>and NIAMBI LUMPKIN PRYER<br><br>Defendants. | C.A. No.<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Ohio Security Insurance Company ("OSIC"), by and through its undersigned counsel, Kennedys CMK LLP, as and for its Complaint for Declaratory Judgment states as follows:

## NATURE OF THE ACTION

1. This is an action for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, in which OSIC seeks a determination concerning the scope and nature of its obligations, if any, in connection with a certain commercial auto insurance policy (the "Policy") issued by OSIC to Defendant Keith Pryer dba Keith Pryer, LLC.

2. This Complaint seeks a declaration that OSIC is not obligated to defend or indemnify Keith Pryer, Keith Pryer LLC, or Niambi Pryer (collectively "Pryer Defendants") under the Policy, with regard to three auto negligence lawsuits captioned:

   1) <u>Shalena Hill and Shalena Hill, as parent and natural guardian of AH, a minor, and Shalena Hill individually and in her own right and Melvin Yelverton v. Marcos Lorenzo et al.</u>, pending in the Philadelphia Court of Common Pleas under Case ID No. 210602082;

   2) <u>Kristina Lorenzo and Marcos Lorenzo and M.L., a minor by his parents and natural guardians, Kristina Lorenzo and Marcos Lorenzo and Kristina Lorenzo and Marcos Lorenzo in their own right and R. L., a minor, by her parents and natural guardians, Kristina Lorenzo and Marcos Lorenzo and Kristina Lorenzo and Marcos Lorenzo in their</u>

1

own right v. Keith Pryer, LLC et al., pending in the Philadelphia Court of Common Pleas under Case ID No. 210602110; and

3) Keith Pryer v. Niambi Lumpkin Pryer a.k.a. Niambi Pryer et al., pending in the Philadelphia Court of Common Pleas under Case ID No. 210602013 (collectively the "Underlying Actions").

3. A copy of the Complaints filed in the Underlying Actions are attached hereto as Exhibits A-C.

4. A judicial determination and a declaration of the rights and obligations of the parties is necessary and appropriate because OSIC has no other remedy at law which will adequately resolve the current controversy.

## THE PARTIES

5. Plaintiff OSIC is a company organized under the laws of the State of New Hampshire with a primary place of business in Boston, Massachusetts.

6. Defendant Keith Pryer is an adult individual residing in Delaware with an address of 7403 Weatherhill Drive, Wilmington, Delaware.

7. Defendant Niambi Lumpkin Pryer is an adult individual residing in Delaware with an address of 7403 Weatherhill Drive, Wilmington, Delaware.

8. Defendant Keith Pryer, LLC is a Delaware limited liability company with a principal place of business in Wilmington, Delaware.

## JURISDICTION AND VENUE

9. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

10. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), because this action is between citizens of different states and the amount in controversy exceeds $75,000.

11. Venue is proper in the District of Delaware pursuant to 28 U.S.C. § 1391(b)(1), because as several of the defendants reside in Delaware and the applicable policy of insurance was issued in Delaware.

## FACTUAL BACKGROUND

**A.   The Underlying Actions**

12. The Pryer Defendants have provided notice to OSIC of the Underlying Actions that have been filed against some or all of the Pryer Defendants, among other defendants, in the Pennsylvania Court of Common Pleas, including the Underlying Action filed by Keith Pryer against Niambi Lumpkin Pryer et al.

13. The Complaints in the Underlying Actions allege that on June 30, 2019 (the "Date of Loss"), insured driver Niambi Lumpkin Pryer was driving named-insured Keith Pryer's 2019 Chevrolet Silverado (the "Insured Vehicle"), when it collided with a 2017 Dodge Journey being operated by Marcos Lorenzo, which was stopped after having previously collided with a Mercedes ML 320 driven by Shalena Hill, which was also stopped at the scene (the "Accident").

14. Upon information and belief, at all relevant times, the Pryer Defendants have maintained that at the time of the Accident, Niambi Lumpkin Pryer was driving the Insured Vehicle.

15. As part of the Underlying Actions, on December 1, 2022, Shalena Hill testified as follows:

> Page 181
> 22 BY MR. PETKA:
> 23 Q. Ms. Hill, you had said earlier,
> 24 and you were kind of cut off, that Mr.
>
> Page 182
> 1 Pryer was not driving that back vehicle?
> 2 A. That's not what I said. I said
> 3 that Pryer was driving that vehicle alone.

3

      4 He was the only one in the car. There was
      5 no one else to drive.
      6 Q. All right. That's what I want
      7 you to do.
      8 Can you explain how you know
      9 that Mr. Pryer was absolutely driving that
      10 vehicle that day when the accident
      11 happened?
      12 A. I seen him get out and I was
      13 videoing. It's all in the video. He's
      14 standing right there. He's the one who
      15 just said, "Were you the one that stopped
      16 and caused us all to hit?" That shows
      17 that he was driving. He just said it. He
      18 admitted to it in the video.
      19 Q. So you watched Mr. Pryer get
      20 out of the driver's side of that vehicle?
      21 A. Yeah. There was no woman. It
      22 was only him.
      23 Q. So you didn't see Mr. Pryer's
      24 wife at all at the scene that day?

      Page 183
      1 A. No. Did you?
      2 Q. I'm asking you.
      3 A. We seen him on the scene.
      4 Where was the wife?
      5 Q. I'm sorry?
      6 A. We seen him on the scene.
      7 Where was the wife?
      8 Q. Well, that's why I just want to
      9 -- my last question though.
      10 A. We seen him.
      11 Q. Was Mr. Pryer --
      12 A. No. I'm sorry.
      13 Q. Was Mr. Pryer's wife even at
      14 the accident scene?
      15 A. No.

    16.    As part of the Underlying Actions, on December 1, 2022, Melvin Yvelerton, who was a passenger in Shalena Hill's vehicle at the time of the Accident, testified as follows:

      Page 24
      18 BY MR. PETKA:
      19 Q. You heard your girlfriend's

20 testimony that Keith Pryer was driving
21 that back vehicle.
22 Did you hear her say that?
23 A. Yeah. That's his name, yeah.
24 Q. Do you agree with that?

Page 23
1 A. Yeah. I saw him.
2 Q. Tell us what you saw with
3 regard to the driver of the last vehicle.
4 A. A black dude. I think he had a
5 hat on. I didn't pay him no mind. I
6 looked at the truck. I think he had a
7 commercial plate on the truck if I'm not
8 correct.
9 Q. Okay.
10 A. Looked at the two vehicles
11 behind us, and that was that.
12 Q. Did you see the black male get
13 out of that last vehicle?
14 A. Did I see him get out?
15 Q. Yeah.
16 A. Yeah, yeah. Yeah, yeah. Yeah.
17 Q. What side did he get out on,
18 the passenger's side or the driver's side?
19 A. The driver's side, and I
20 believe he had his phone. He was calling.
21 Q. He was on the phone when he was
22 getting out?
23 A. Yeah. When he got out, he was
24 on that phone.

Page 24
1 Q. Was there any woman with the
2 black male that was driving --
3 A. No. No, nobody. No lady, no.
4 Q. Okay. Well, let me get the
5 whole question out before you answer.
6 Was there any woman with the
7 driver of that last vehicle that was in
8 the back?
9 A. No.

  17.  As part of the Underlying Actions, on December 1, 2022, defendant Niambi Lumpkin Pryer testified as follows:

> Page 11
> 18 Q. Does your husband have a valid
> 19 driver's license?
> 20 A. I don't know my husband's
> 21 affairs. I don't involve myself in his
> 22 driver's license or his personal business.
> 23 Q. You have no idea whether he has
> 24 a valid driver's license or not?
>
> Page 12
> 1 A. I do not. I know I have a
> 2 valid driver's license.
> 3 Q. This accident happened June 30,
> 4 2019, right?
> 5 A. Correct.
> 6 Q. Do you have any idea whether
> 7 your husband had a valid driver's license
> 8 on June 30, 2019?
> 9 A. I do not.
> 10 Q. Have you ever known your
> 11 husband to have a valid driver's license?
> 12 A. As far as we communicated, yes,
> 13 but in terms of me really being able to
> 14 validate if he did or didn't, no, I do
> 15 not.
> 16 Q. How often does your husband
> 17 drive?
> 18 A. I'm not sure. I'm out of the
> 19 house a lot. I work a full-time job. So
> 20 what he's doing during the day driving or
> 21 not, I don't know.

    18.    As part of the Underlying Actions, on December 1, 2022, defendant Keith Pryer testified as follows:

> Page 16
> 18 BY MR. PETKA:
> 19 Q. Mr. Pryer, I was asking what
> 20 does your wife do for a living?
> 21 A. She's an HR manager director.
> 22 Q. For what?
> 23 A. At this specific time?
> 24 Q. Yeah, at the time of this
>
> Page 17

> 1 accident, was she an HR director
> 2 somewhere?
> 3 A. Yeah. She was, I think, an HR
> 4 manager at NAPA. Either NAPA or -- yeah.
> 5 I think around NAPA. I'm not sure.
> 6 Q. Is that a full-time job?
> 7 A. Yeah.
> 8 Q. So before this accident, how
> 9 would you get to work? Would you still
> 10 drive yourself even if you didn't have a
> 11 license?
> 12 A. I have multiple workers. A lot
> 13 of times I don't -- a lot of times I have
> 14 either my project manager or site
> 15 supervisor -- most of the sites was near
> 16 me, so I allowed my site super or PM to
> 17 take their work vehicles home and come
> 18 back to my residence in the morning and we
> 19 would develop a plan, and then we would
> 20 head off to work from there.

19. Upon notice of the conflicting testimony regarding the identity of the driver of the Pryer vehicle, OSIC immediately initiated further investigation of the claim(s) made against the Policy.

**B.    OSIC Coverage Position Letters**

20. During the course of its investigation, on March 9, 2023, OSIC issued a reservation of rights letter to Niambi Lumpkin Pryer, advising her that the deposition testimony of both Shalena Hill and Melvin Yvelerton contradicted the Pryer Defendants' version of events insofar as Shalena Hill and Melvin Yvelerton testified that they saw Keith Pryer exit the driver's side of his vehicle after the accident and that a woman was not in the Insured Vehicle at the time of the accident.

21.    The March 9, 2023 letter further agreed to continue a defense of Niambi Lumpkin Pryer subject to a reservation of rights to disclaim coverage, in whole or in part, at a later date.

22. The March 9, 2023 letter further requested that Niambi Lumpkin Pryer provide "any facts or other information that you believe may impact [OSIC's] coverage position" so that OSIC could further evaluate its coverage position.

23. A second, identical reservation of rights letter was sent to Niambia Lumpkin Pryer on March 23, 2023, on the same grounds.

24. To date, Niambi Lumpkin Pryer has not responded to either letter.

25. On June 21, 2023, OSIC issued a reservation of rights letter to Keith Pryer, advising him that the deposition testimony of both Shalena Hill and Melvin Yvelerton contradicted his and Niambi Lumpkin Pryer's version of events insofar as Hill and Yvelerton testified that they saw Pryer exit the driver's side of his vehicle after the accident and that a woman was not in the Pryer vehicle at the time of the accident.

26. The June 21, 2023, letter further agreed to continue a defense of Pryer subject to a reservation of rights to disclaim coverage, in whole or in part, at a later date.

27. The June 21, 2023, letter further requested that Keith Pryer provide "any facts or other information that you believe may impact [OSIC's] coverage position", so that OSIC could further evaluate its coverage position.

C. **OSIC Commercial Auto Policy**

28. OSIC issued a commercial auto policy (the "Policy"), No. BAS (20) 59834715 to Keith Prior DBA Keith Prior LLC,[1] with effective dates of May 3, 2019, to May 3, 2020.[2] The Policy provides limits of $1 million per accident liability limit, $1 million uninsured motorist limit, and Personal Injury Protection (P.I.P.) limits of $30,000. A true copy of the Policy is attached hereto as Exhibit D.

---

[1] Later corrected to "Keith Pryer dba Keith Pryer, LLC"
[2] On December 17, 2019 the Policy was canceled due to non-payment.

29. At the time Keith Pryer dba Keith Pryer, LCC applied for the Policy, the only scheduled driver named to the Policy was Niambi Lumpkin.

30. This was despite the fact that it was Keith Pryer's testimony that he had "multiple workers" or "project managers" or "site supervisors" to drive him to work sites.

31. At all relevant times, Keith Pryer was not a listed driver under the Policy.

32. The Policy contains the following relevant insuring agreement:

### SECTION II- LIABILITY COVERAGE

    A.    **Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which the insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto"

We will also pay all sums an "insured "legally must pay as a "covered pollution cost or expense to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if this is either "bodily injury" or
"property damage" or a "covered pollution cost or expense" to which this insurance
applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We
may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment or judgment or settlements.

        **1.  Who Is An Insured**

            The following are "insured";

      **a.** You for any covered "auto".

      **b.** Anyone else while using with your permission a covered "auto: you own, hire or borrow except:

          **(1)** The owner or any else form whom you hire, or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto".

          **(2)** Your "employee" if the covered "auto" is owned by that "employee" or member of his or her household.

          **(3)** Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

          **(4)** Anyone other than your "employees" partners (if you are a partnership), members (if you are a limited liability company), or lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

          **(5)** A partner (if you are a partnership), or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his household.

      **c.** Anyone liable for the conduct of an "insured" described above but only for the extent of that liability.

33.    The Policy further contains the following relevant Definitions:

        **SECTION V- DEFINITIONS**

      **A.**    "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

      **B.**    "Auto" means;

    1. A land motor vehicle, "trailer" or semi-trailer designed for travel on public roads; or
    2. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.
   However, "auto" does not include "mobile equipment".

  **C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

34. The Policy further contains the following Loss Conditions:

  **2.** **Duties In The Event Of Accident, Claim, Suit Or Loss**
   We have no duty to provide coverage under this policy unless there have been full compliance with the following duties:

  **a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

   **(1)** How, when and where the "accident" or "loss" occurred;
   **(2)** The "insured's" name and address; and
   **(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

  **b.** Additionally, you and any other involved "insured" must:
   **(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.
   **(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".
   **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

11

  **(4)** Authorize us to obtain medical records or other pertinent information.

  **(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

35. The Policy further contains the following General Conditions:

  **2.** **Concealment, Misrepresentation Or Fraud**

  This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", if you or any other "insured", at any time intentionally conceal or misrepresent a material fact concerning:

  **a.** This Coverage Form;

  **b.** The covered "auto";

  **c.** Your interest in the covered "auto"; or

  **d.** A claim under this Coverage Form.

<u>**COUNT I**</u>

<u>**FOR JUDGMENT DECLARING THAT THE POLICY DOES NOT AFFORD COVERAGE TO KEITH PRYER, KEITH PRYER LLC, OR NIAMBI LUMPKIN PRYER BASED UPON MATERIAL MISREPRESENTATIONS IN THE POLICY APPLICATION**</u>

36. OSIC repeats the allegations set forth in paragraph 1 through 35 as though set forth at length herein.

37. Upon information and belief, at the time that the Pryer Defendants applied for the Policy, Niambi Lumpkin was not employed by Keith Pryer's painting and drywall business known as Keith Pryer, LLC such that she would be driving the Insured Vehicle in the regular course of business.

38. Upon information and belief, at the time that the Pryer Defendants applied for the Policy, and contrary to his testimony that he had "multiple workers" or "project managers" or "site

12

supervisors" to drive him to work sites, the Pryer Defendants misrepresented to OSIC that **only** Niambi Lumpkin would be driving the Insured Vehicle as part of the business of Keith Pryer dba Keith Pryer, LLC.

39. Said misrepresentation was fraudulent and/or material to the acceptance of the risk by OSIC.

40. OSIC relied upon said misrepresentation in issuing the Policy to Keith Pryer dba Keith Pryer, LLC.

41. OSIC further relied upon said misrepresentation in determining the premium rate for the Policy.

42. OSIC further relied upon said misrepresentation in determining the Policy limits.

43. OSIC further relied upon said misrepresentation in determining that it would provide coverage for Keith Pryer dba Keith Pryer, LLC's painting and drywall business.

44. Had OSIC known that Niambi Pryer Lumpkin was not going to be driving the Insured Vehicle as part of Keith Pryer's painting and drywall business, OSIC would not have issued the Policy, or would not have issued it at the same premium rate, or would not have issued the Policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss.

45. Upon information and belief, at the time the Pryer Defendants applied for the Policy, Keith Pryer did not have a valid driver's license.

46. Said misrepresentation by omission was fraudulent and/or material to the acceptance of the risk by OSIC.

47. OSIC relied upon said misrepresentation by omission in issuing the Policy to Keith Pryer dba Keith Pryer, LLC.

48.     OSIC further relied upon said misrepresentation by omission in determining the premium rate for the Policy.

49.     OSIC further relied upon said misrepresentation by omission in determining the Policy limits.

50.     OSIC further relied upon said misrepresentation by omission in determining that it would provide coverage for Keith Pryer dba Keith Pryer, LLC's painting and drywall business.

51.     Had OSIC known that Keith Pryer did not have a valid driver's license at the time he applied for the Policy, OSIC would not have issued the Policy, or would not have issued it at the same premium rate, or would not have issued the Policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss.

52.     As a result of the material misrepresentations made by the Pryer Defendants in the application for the Policy, OSIC has suffered and will continue to suffer damages.

53.     Pursuant to 28 U.S.C. § 2201, OSIC seeks judgment declaring that the Policy does not afford coverage to the Pryer Defendants for the claims asserted against the Pryer Defendants in the Underlying Actions, for the following reasons:

      a.     Coverage for the claims asserted in the Underlying Actions is not available under the Policy because the Pryer Defendants made material misrepresentations in obtaining the Policy;

WHEREFORE, OSIC demands judgment declaring that it has no duty to defend or indemnify the Pryer Defendants under the Policy for the claims asserted against the Pryer Defendants in the Underlying Actions.

### COUNT II

### FOR JUDGMENT DECLARING THAT THE POLICY DOES NOT AFFORD COVERAGE TO KEITH PRYER, KEITH PRYER LLC, OR NIAMBI LUMPKIN PRYER BASED UPON MATERIAL

## MISREPRESENTATIONS MADE BY KEITH PRYER AND NIAMBI LUMPKIN PRYER REGARDING THE HAPPENING OF THE ACCIDENT

54. OSIC repeats the allegations set forth in paragraph 1 through 53 as though set forth at length herein.

55. Upon information and belief, Keith Pryer and Niambi Pryer mispresented to OSIC that Niambi Pryer was driving the Insured Vehicle at the time of the Accident.

56. Said misrepresentation constitutes a failure to cooperate under the Policy's Loss Conditions.

57. The Pryer Defendants further failed to cooperate under the Policy's Loss Conditions by failing to respond to OSIC's reservation of rights letters dated March 6, 2023, March 23, 2023 and June 21, 2023.

58. Further, Keith Pryer and Niambi Pryer's misrepresentation of the identity of the driver of the Insured Vehicle on the date of loss was fraudulent and/or material to the coverage position undertaken by OSIC with respect to the defense and indemnification of the Pryer Defendants.

59. OSIC relied upon said misrepresentation in undertaking defense and indemnity obligations on behalf of the Pryer Defendants.

60. Had OSIC known that Niambi Lumpkin Pryer was not driving the scheduled vehicle on the date of loss, OSIC would not have undertaken defense and indemnity obligations on behalf of the Pryer Defendants.

61. As a result of the material misrepresentations made by the Pryer Defendants in relation to the Accident, OSIC has suffered and will continue to suffer damages.

62. Pursuant to 28 U.S.C. § 2201, OSIC seeks judgment declaring that the Policy does not afford coverage to the Pryer Defendants for the claims asserted against the Pryer Defendants in the Underlying Actions, for the following reasons:

    b. Coverage for the claims asserted in the Underlying Actions is not available under the Policy because the Pryer Defedants failed to cooperate with OSIC's investigation of the claims;

    c. Coverage for the claims asserted in the Underlying Actions is not available under the Policy because, the Pryer Defendants made material misrepresentations regarding the happening of the Accident described in the Underlying Actions;

    d. Pursuant to the general Conditions of Section IV of the Policy, the Policy is void due to said material misrepresentations,

WHEREFORE, OSIC demands judgment declaring that it has no duty to defend or indemnify the Pryer Defendants under the Policy for the claims asserted against the Pryer Defendants in the Underlying Actions.

## DEMAND FOR JURY TRIAL

OSIC hereby demands a trial by jury on all issues.

## REQUEST FOR DECLARATORY RELIEF

WHEREFORE, Plaintiff OSIC ("OSIC") prays for judgment in its favor and against the Pryer Defendants as follows:

    a. Declaring that OSIC is not obligated to provide a defense or indemnification to the Pryer Defendants under the OSIC Policy for the claims asserted against the Pryer Defendants in the Underlying Actions;

b. Declaring that pursuant to the general Conditions of Section IV of the Policy, the Policy is void due to said material misrepresentations;

c. Awarding consequential damages, attorneys' fees, costs of suit, and such other relief as the Court may consider equitable, fair and proper.

Dated: 7/14/23

    Respectfully submitted:
**KENNEDYS CMK LLP**

/s/ *Karine Sarkisian*
Karine Sarkisian (#6202)
919 N. Market Street, Suite 1550
Wilmington, DE 19801
302.308.6649
Karine.sarkisian@kennedyslaw.com
*Counsel for Ohio Security Insurance Company.*

Gary S. Kull, Esq. (*to be admitted pro hac vice*)
Sean P. Shoolbraid, Esq. (*to be admitted pro hac vice*)
KENNEDYS CMK LLP
120 Mountain View Boulevard
P.O. Box 650
Basking Ridge, NJ 07920
Tel: (908)848-6300
Email: Gary.Kull@kennedyslaw.com
    Sean.Shoolbraid@kennedyslaw.com

*Attorneys for Ohio Security Insurance Company*